## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **Massachusetts Bay Insurance Company and Hanover Insurance Company,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No.:_____** |
| ) | |
| **Brentwood Academy, Inc. and Brentwood Academy; Curtis G. Masters; Nancy Brasher; Buddy Alexander; Lyle Husband; Mike Vasquez; John Doe by his Next Friend Jane Doe and Jane Doe in Her Individual Capacity** ) | |
| ) | |
| **Defendants.** ) | |

## PETITION FOR DECLARATORY JUDGMENT

COME NOW Massachusetts Bay Insurance Company and Hanover Insurance Company (sometimes collectively referred to as "Hanover"), and file this Petition for Declaratory Judgment as follows:

1.      This action for declaratory relief is brought to determine the rights, duties, status, and legal rights under the insurance policies described below.

## PARTIES

2.      Massachusetts Bay Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

1

3.    Hanover Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business in Worcester, Massachusetts.

4.    Brentwood Academy, Inc. and Brentwood Academy (collectively referred to as "BA") is an incorporated entity and/or nonprofit entity organized and existing under the laws of the State of Tennessee, with its principal place of business in Brentwood, Tennessee.

5.    Curtis G. Masters is a citizen and resident of the State of Tennessee.  Upon information and belief, Mr. Masters resides in Brentwood, Tennessee.

6.    Nancy Brasher is a citizen and resident of the State of Tennessee.  Upon information and belief, Ms. Brasher resides in Brentwood, Tennessee.

7.    Lyle Husband is a citizen and resident of the State of Tennessee.  Upon information and belief, Mr. Husband resides in Brentwood, Tennessee.

8.    Mike Vazquez is a citizen and resident of the State of Tennessee.  Upon information and belief, Mr. Vazquez resides in Brentwood, Tennessee.

9.    Jane Doe is an adult citizen and resident of the State of Tennessee and the mother of John Doe.  Upon information and belief, Jane Doe resides in Nashville, Tennessee.

10.    John Doe is a minor citizen and resident of the State of Tennessee. Upon information and belief, John Doe resides in Nashville, Tennessee with his mother, Jane Doe.

## JURISDICTION AND VENUE

11.    Hanover brings this action for declaratory judgment pursuant to 28 U.S.C. Section 2201 and Federal Rule of Civil Procedure 57.

2

12.     This Court has jurisdiction to hear this cause based on diversity of citizenship pursuant to 28 U.S.C. Section 1332. Hanover is diverse from all of the defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13.     Venue in this District is proper pursuant to 28 U.S.C. Section 1391(a)(2), as a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

## FACTUAL BACKGROUND

14.     Jane Doe is the mother and custodial parent of John Doe, a minor.

15.     On or about August 4, 2017, John Doe by his next friend Jane Doe, and Jane Doe in her individual capacity, filed a Complaint in the Circuit Court for Williamson County, Tennessee at Franklin, CV-2017-435. (The "Underlying Action"). A copy of the Does' Complaint in the Underlying Action is attached as Exhibit "A."

16.     The Does name BA, Mr. Masters, Ms. Brasher, Mr. Alexander, Mr. Husband, and Mr. Vazquez as defendants in the Underlying Action (sometimes collectively referred to as the "BA Defendants").

17.     Through their Complaint in the Underlying Action, the Does allege that, between January and March of 2015, John Doe was a twelve-year-old student in sixth grade at BA.

18.     At all times relevant to the Does' Complaint in the Underlying Action, Mr. Masters was the headmaster at BA.

19.     At all times relevant to the Does' Complaint in the Underlying Action, Ms. Brasher was the director of the middle school at BA and a board member of Daystar Counseling ("Daystar").

3

20.    At all times relevant to the Does' Complaint in the Underlying Action, Mr. Alexander was the administrator and/or middle school athletic director at BA.

21.    At all times relevant to the Does' Complaint in the Underlying Action, Mr. Husband was the assistant basketball coach and English teacher at BA

22.    At all times relevant to the Does' Complaint in the Underlying Action, Mr. Vazquez was the head sixth-grade basketball coach at BA.

23.    Through their Complaint in the Underlying Action, the Does allege that, during the 2014-2015 academic year, B.B., C.D., C.M., and/or R.G. were fourteen and/or fifteen-year-old students in the eighth grade at BA, and W.F. was a student in the sixth grade at BA.

24.    Through their Complaint in the Underlying Action, the Does allege that during the 2014-2015 academic year, C.M. and/or other students restrained John Doe and engaged in inappropriate sexual conduct.

25.    Through their Complaint in the Underlying Action, the Does allege that, in January and February of 2015, on four dates, B.B., C.D., C.M., and/or R.G. and/or others conspired to engage in and engaged in male on male sexual harassment, sexual assault, and/or rape upon John Doe in the locker room not supervised by an adult.

26.    Through their Complaint in the Underlying Action, the Does allege that, during the 2014-2015 academic year and prior to the incidents involving John Doe, the student perpetrators conspired and perpetrated numerous acts of intimidation, harassment, assault, and/or bullying on other students, and BA and its board of trustees were on actual and/or constructive notice but failed to address the issues.

4

27.     Through their Complaint in the Underlying Action, the Does allege that, in April of 2015, Jane Doe learned of the sexual assault of her son and she informed a counselor at Daystar about the facts.   The Does also allege that BA learned of the incidents and engaged in communications of confidential and non-confidential information with Daystar and the Does' minister.

28.     Through their Complaint in the Underlying Action, the Does allege that Mr. Masters asked Jane Doe to allow the "BA Family" to handle the allegations against C.M.  The Does further alleged that, on or about April 19, 2015, Ms. Brasher (a Daystar Board member), Mr. Masters, and Mr. Alexander discussed the allegations and "accused Plaintiff John Doe of being at fault for not reporting it and that it could not be true because the four students had been removed from the locker room in January 2015.  Defendant Brasher's contention was that it could not have occurred in late January and/or early February if the four students were removed in January 2015."

29.     Through their Complaint in the Underlying Action, the Does allege that, "Upon information and belief, Defendant Brasher by implication asserted an admission that Defendant BA and/or one or more of each Defendant in this cause was on actual notice of these incidents occurring subsequent to the first incident but prior to the fourth incident."

30.     Through Count One of their Complaint in the Underlying Action, the Does assert a claim for "Negligence" against all BA Defendants.  The Does allege that the BA Defendants had notice of the hostile and/or unsafe environments consisting of severe and/or pervasive pattern of harassment, assault, sexual harassment, sexual assault, rape, and/or bullying perpetrated by W.F., B.B., C.D. C.M., R.G. and/or other students upon John Doe.  The Does claim that the BA Defendants failed to respond or redress these issues and failed to exercise their authority to

5

supervise, investigate, discipline, and/or report the offenders. "These Defendants further failed to report the child abuse to authorities and/or parents pursuant to T.C.A. § 37-1-401 et seq." The Does also allege that the BA Defendants failed to institute corrective measures prior to and/or during the time the incidents involving John Doe occurred. The Does claim the harassment, assault, sexual harassment, sexual assault, rape, and/or bullying suffered by John Doe were the result of a pattern, practice, and/or custom of the BA Defendants.

31.     Through Count Two of their Complaint in the Underlying Action, the Does assert a claim for "Negligent Supervision and/or Retention" against BA. The Does allege that BA owed the Does a duty of care by properly supervising and/or retaining employees who had actual or constructive knowledge of the issues, but failed to implement and/or execute policies and provisions or comply with statutes regarding bullying, harassment, sexually charged acts and/or harassment, sexual assault, and/or rape; and failing to have proper adult supervision in the locker room to deter such acts.

32.     Through Count Three of their Complaint in the Underlying Action, the Does assert a claim for "Negligent Infliction of Emotional Distress" against all of the BA Defendants. The Does allege that the BA Defendants' negligent breach of the duty of care identified above constitutes the tort of negligent infliction of emotional distress.

33.     Through Count Four of their Complaint in the Underlying Action, the Does assert a claim for "Invasion of Privacy" against BA. The Does claim that BA invaded John Doe's privacy by disclosing and communicating his private affairs identified in the facts of the Complaint with Daystar.

6

34. Through Count Five of their Complaint in the Underlying Action, the Does assert a claim for "Inducement to Breach of Contract" against BA. The Does allege that BA's actions identified in the facts of the Complaint constitute the tort of inducement to breach of contract at common law and in violation of T.C.A. Section 47-50-109. The Does allege that BA was aware of a contract containing covenants of confidentiality; intended to induce a breach of that contract by soliciting protected health information from Daystar; acted with malice; and breached the contract.

35. Through Count Six of their Complaint in the Underlying Action, the Does assert a claim for "Inducement to Breach an Express Contract of Confidentiality" against BA regarding the Does' express contract of confidentiality with Daystar.

36. Through Count Seven of their Complaint in the Underlying Action, the Does assert a claim for "Inducement to Breach an Implied Contract of Confidentiality" against BA. The Does claim that BA was aware of a contract containing express and/or implied covenants of confidentiality and intended to induce a breach of that contract by soliciting protected health information from Daystar.

37. Through Count Eight of their Complaint in the Underlying Action, the Does assert a claim for "Breach of Contract" against BA. The Does allege that Jane Doe entered into a contract and/or admissions agreement with BA in which BA agreed to, among other things, enforce policies regarding sexual harassment, sexual assault, rape, and bullying; enforce procedures to investigate such acts; and comply with mandatory child abuse reporting statute Tennessee Code Annotated 37-1-401 et seq. The Does claim that BA breached this contract.

38. Through Count Nine of their Complaint in the Underlying Action, the Does assert a claim for "Failure to Comply with Tennessee Code Annotated 37-1-401 et seq. Mandatory Child

7

Abuse Reports" against all of the BA Defendants. The Does allege that the BA Defendants each owed a duty of care to John Doe to report him as a suspected victim and/or victim of sexual assault or abuse under the Tennessee statute, but that the BA Defendants breached this duty by failing to report the sexual assault and/or abuse of John Doe to the appropriate authorities.

39.     Through Count Ten of their Complaint in the Underlying Action, the Does assert a claim for "Intentional Infliction of Emotional Distress" against all of the BA Defendants. The Does allege that the acts of the BA Defendants toward John Doe were committed in an intentional or reckless manner, were outrageous and intolerable, and caused the Does to suffer emotional distress.

40.     Through their Complaint in the Underlying Action, the Does claim $15,000,000 in compensatory damages and $15,000,000 in punitive damages.

41.     In support of their damages claim, the Does allege that all of the BA Defendants intentionally did not comply with T.C.A. 37-1-403.

42.     Hanover issued a Commercial Line policy to BA bearing policy number ZD5 9689021 02 for the policy period September 1, 2014 to September 1, 2015. (The "Primary Policy"). A certified copy of the Primary Policy for September 1, 2014 to September 1, 2015 is attached hereto as Exhibit "B" and incorporated as if fully set forth herein.

43.     The Primary Policy contains a main commercial general liability coverage form that provides, in part:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a

8

Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

. . .

## SECTION II - WHO IS AN INSURED

**1.**    If you are designated in the Declarations as:

. . .

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

**2.**    Each of the following is also an insured:

    **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . ..

. . .

## SECTION III - LIMITS OF INSURANCE

**1.**    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
    **a.**    Insureds;
    **b.**    Claims made or "suits" brought; or

      **c.**      Persons or organizations making claims or bringing "suits".

. . .

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

**2.**      **Duties In The Event of Occurrence, Offense, Claim or Suit**

      **a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)**      How, when and where the "occurrence" or offense took place;

      **(2)**      The names and addresses of any injured persons and witnesses; and

      **(3)**      The nature and location of any injury or damage arising out of the "occurrence" or offense.

      **b.**      If a claim is made or "suit" is brought against any insured, you must:

      **(1)**      Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)**      Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

      **c.**      You and any other involved insured must:

      **(1)**      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)**      Authorize us to obtain records and other information;

      **(3)**      Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)**      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

10

      **d.**      No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without or consent.[1]

. . .

## SECTION V - DEFINITIONS

. . .

**3.**      "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury"

. . .

**5.**      "Employee" includes a "leased worker". "Employee" does not include a "temporary work".

---

[1] The "Educational Institution Amendatory Endorsement" amends this section as follows:
. . .

**11.     UNINTENTIONAL FAILURE TO NOTIFY**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties in the event of "Occurrence", Offense, Claim or "Suit"**:
Your rights afforded under this policy shall not be prejudiced if you fail to give us notice of an "occurrence," offense, claim or "suit," solely due to your reasonable and documented belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this policy.

**12.     KNOWLEDGE OF OCCURRENCE**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties in the Event of "Occurrence", Offense, Claim or "Suit"**:
Notice of an "occurrence", offense, claim or "suit" will be considered knowledge of the insured if reported to an individual named insured, partner, "executive officer" or an "employee" designated by you to give us such a notice.
. . .

11

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    **a.** False arrest, detention or imprisonment;
    **b.** Malicious prosecution;
    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    **e.** Oral or written publication, in any manner, of material that violates a person's rights of privacy;
    **f.** The use of another's advertising idea in your "advertisement"; or
    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

[Exhibit "B" at Form CG 00 01 12 07].

44.    The Primary Policy also contains the "Sexual Misconduct or Sexual Molestation Endorsement," which contains a $1,000,000 each incident policy limit and a $1,000,000 aggregate policy limit. The Sexual Misconduct or Sexual Molestation Endorsement provides, in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . .

Except for the insurance provided by this endorsement, the Coverage Part to which this endorsement is attached does not apply to any claim or "suit" seeking damages arising out of any actual or alleged "sexual misconduct or sexual molestation incident".

12

**A.** The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **1.**     **Insuring Agreement**

        **a.**     We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of a "sexual misconduct or sexual molestation incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "sexual misconduct or sexual molestation incident" and settle any claim or "suit" that may result. But:

            **(1)**     The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE** of this endorsement; and

            **(2)**     Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under the insurance provided by this endorsement.

        No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

        **b.**     This insurance applies to "bodily injury" arising out of a "sexual misconduct or sexual molestation incident" only if:

            **(1)**     The "sexual misconduct or sexual molestation incident" takes place in the "coverage territory";
            **(2)**     The "sexual misconduct or sexual molestation incident" occurs during the policy period; and
            **(3)**     Prior to policy period no insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of a "sexual misconduct or sexual molestation incident" or claim, knew that the "sexual misconduct or sexual molestation incident" had occurred in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that

13

the "sexual misconduct or sexual molestation incident" occurred, then any multiple, continuous, related or repeated acts of such "sexual misconduct or sexual molestation" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

## 2. Exclusions

The insurance provided under this endorsement does not apply to:

**a.  Participating In or Knowingly Allowing Sexual Misconduct or Sexual Molestation**

Any insured who participated in, knowingly allowed or directed any "sexual misconduct or sexual molestation incident".

**b.  Dishonest, Fraudulent, Criminal, Wrongful or Malicious Act**

"Bodily injury" arising out of any intentional dishonest, fraudulent, criminal, wrongful or malicious act, error or omission, committed by, knowingly allowed or directed by the insured, including the willful or reckless violation of any statute of law.

This exclusion applies even if:

**(1)**  The insured or the person causing the "bodily injury" lacks the mental capacity to control or govern his or her own conduct; or

**(2)**  The insured or the person causing the "bodily injury" temporarily lacks the capacity to control or govern his or her own conduct or is temporarily unable to form any intent to cause harm.

This exclusion applies regardless whether the insured or the person causing the "bodily injury" is actually charged with or convicted of a crime.

14

. . .

**d.** **Contractual**

Liability assumed by an insured under any contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

. . .

**h.** **Punitive or Exemplary Damages**

Any sum awarded for punitive damages, exemplary damages, multiplied damages, taxes, fines or penalties arising out of any "sexual misconduct or sexual molestation incident".

**i.** **Bodily Injury, Property Damage, Personal and Advertising Injury**

**(1)** "Bodily injury" for which insurance is provided by other insurance, or which would have been provided but for the exhaustion of limits; or

**(2)** "Property damage" or "personal and advertising injury".

. . .

**B.** The following is added to **SECTION II - WHO IS AN INSURED:**

For the purpose of the coverage provided by this endorsement, none of the following is an insured:

**1.** Any insured who participated in, knowingly allowed or directed a "sexual misconduct or sexual molestation incident"; or

**2.** Any person who knew of a "sexual misconduct or sexual molestation incident" and failed to comply with any applicable federal, state or local laws, ordinances or regulations which require the reporting of such act.

15

**C.** For the purpose of the coverage provided by this endorsement, the following applies to **SECTION III LIMITS OF INSURANCE:**

**1.** The Limits of Insurance shown in the Schedule or Declaration and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;
**b.** Claims made or "suits" brought; or
**c.** Persons or organizations making claims or bringing "suits".

**2.** The "Sexual Misconduct or Sexual Molestation" Aggregate Limit is the most we will pay for all damages because of or arising in any way out of "sexual misconduct or sexual molestation" to which this insurance applies.

**3.** Subject to the "Sexual Misconduct or Sexual Molestation" Aggregate Limit, the "Sexual Misconduct or Sexual Molestation". Each Incident Limit is the most we will pay for all damages sustained in any one "sexual misconduct or sexual molestation incident".

**D. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,**

Paragraph **2.a.** is replaced by the following:

**2. Duties In the Event Of an Act, Error or Omission, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of a "sexual misconduct or sexual molestation incident" or an offense which may result in a claim. Notice should include:

**(1)** How, when and where the "sexual misconduct or sexual molestation incident" or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature of any injury arising out of the "sexual misconduct or sexual molestation incident" or offense.

**E.** The following is added to **SECTION V - DEFINITIONS:**

**1.** "Sexual misconduct or sexual molestation" means actual or alleged physical sexual misconduct or physical sexual molestation arising out

16

of a single, continuous or repeated exposure of one or more persons to acts of a physical sexual nature committed by:

    **a.**    One person; or

    **b.**    Two or more persons acting together or in related acts or series of acts.

However, "sexual misconduct or sexual molestation" does not include employment-related sexual harassment.

    **2.**    "Sexual misconduct or sexual molestation incident" means an act or multiple, continuous, related or repeated acts of "sexual misconduct or sexual molestation" by any person or two or more persons acting together. All acts of "sexual misconduct or sexual molestation" by one person or two or more persons acting together. All acts of "sexual misconduct or sexual molestation" by any one person, or two or more persons acting together will be deemed to be one incident. The "sexual misconduct or sexual molestation incident" will be deemed to occur when the first "sexual misconduct or sexual molestation incident" takes place regardless of:

    **a.**    The number of persons injured;

    **b.**    The time period over which the "bodily injury" took place;

    **c.**    The number of such acts; or

    **d.**    Whether each such person participated in each act.

All "sexual misconduct or sexual molestation incidents" by one person, or two or more persons action together will be considered one "sexual misconduct or sexual molestation incident".

    **F.**    For the purpose of coverage provided by this endorsement, under **SECTION V - DEFINITIONS,** the definition of "bodily injury" is replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person. "Bodily injury" includes mental anguish, mental injury, shock, fright or death resulting from physical injury.

[Exhibit "B" at Endorsement 421-0334 02 11].

    45.    The Primary Policy contains the following Endorsement:

## OTHER COVERAGE ENDORSEMENT

17

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

For the purpose of this endorsement only, the following is added to **SECTION IV - CONDITIONS:**

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to the named insured by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim, "occurrence", offense, accident or loss.

If this endorsement and any other coverage part, form, endorsement or policy issued to the named insured by us, or any company affiliated with us, apply to the same claim, "occurrence", offense, accident or loss, the maximum Limit of Insurance under all such coverage parts, forms endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

[Exhibit "B" at Endorsement 421-0361 10 10].

46.     Hanover also issued a Commercial Liability Umbrella policy to BA bearing policy number UH5 9694685 02 for the policy period September 1, 2014 to September 1, 2015.  (The "Umbrella Policy").  A certified copy of the Umbrella Policy for September 1, 2014 to September 1, 2015 is attached hereto as Exhibit "C" and incorporated as if fully set forth herein.

47.     The Umbrella policy provides, in part:

## COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

18

The word "insured" means any person or organization qualifying as such under Section II - Who is An Insured.

Other words and phrases that appear I quotation marks have special meaning. Refer to Section V - Definitions.

. . .

## SECTION II - WHO IS AN INSURED

**1.**    Except for liability arising out of the ownership, maintenance or use of "covered autos":

    **a.**    If you are designated in the Declarations as:

    . . .

        **(4)**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders

    . . .

    **b.**    Each of the follow is also an insured:

        **(1)**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    . . .

## SECTION IV - CONDITIONS

. . .

**3.**    **Duties In the Event of Occurrence, Offense, Claim Or Suit**

19

a.　You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  To the extent possible, notice should include:

　　(1)　How, when and where the "occurrence" or offense took place;

　　(2)　The names and addresses of any injured persons and witnesses; and

　　(3)　The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.　If a claim is made or "suit" is brought against any insured, you must:

　　(1)　Immediately record the specifics of the claim or "suit" and the date received; and

　　(2)　Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.　You and any other involved insured must:

　　(1)　Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

　　(2)　Authorize us to obtain records and other information;

　　(3)　Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

　　(4)　Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.　No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without or consent.

48.     The Umbrella policy also includes a "Sexual Misconduct or Sexual Molestation Liability Follow-Form Coverage Endorsement" with an each incident limit of $10,000,000 and an aggregate limit of $10,000,000.  Like the Primary Policy, the Sexual Misconduct or Molestation Endorsement in the Umbrella Policy provides, in part:

### SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY FOLLOW-FORM COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

. . .

Except for the insurance provided by this endorsement, the Coverage Part to which this endorsement is attached does not apply to any claim or "suit" seeking damages arising out of any actual or alleged "sexual misconduct or sexual molestation incident".

**A.**     The following is added to **SECTION I - COVERAGES:**

   **1.     Insuring Agreement**

      **a.**     We will pay those sums in excess of the "underlying insurance: the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of a "sexual misconduct or sexual molestation incident" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages when the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any "suit" seeking damages for "bodily injury" to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.  We may, at our discretion, investigate any "sexual misconduct or sexual molestation incident" and settle any claim or "suit" that may result.  But:

21

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE** of this endorsement; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A, B.** or **Sexual Misconduct or Sexual Molestation Liability Follow-Form Coverage Endorsement.**

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS.**

**b.** This insurance applies to "bodily injury" only if:

**(1)** The "bodily injury" is caused by a "sexual misconduct or sexual molestation incident" that takes place in the "coverage territory";

**(2)** The first act of a "sexual misconduct or sexual molestation incident" occurs during the policy period; and

**(3)** Prior to the policy period no insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of a "sexual misconduct or sexual molestation incident" or claim, knew that the "bodily injury" had occurred in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "sexual misconduct or sexual molestation incident" occurred, then any continuation, change or resumption of such "bodily injury" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

**2. Exclusions**

The insurance provided under this endorsement does not apply to:

**a. Participation In or Knowingly Allowing "Sexual Misconduct or Sexual Molestation"**

Any insured who participated in, knowingly allowed or directed any "sexual misconduct or sexual molestation incident".

**b.** **Dishonest, Fraudulent, Criminal, Wrongful or Malicious Act**

"Bodily injury" arising out of any intentional, dishonest, fraudulent, criminal, wrongful or malicious act, error or omission, committed by, knowingly allowed or directed by the insured, including the willful or reckless violation of any statute of law.

This exclusion applies even if:

**(1)** The insured or the person causing the "bodily injury" lacks the mental capacity to control or govern his or her own conduct; or

**(2)** The insured or the person causing the "bodily injury" temporarily lacks the capacity to control or govern his or her own conduct or is temporarily unable to form any intent to cause harm.

This exclusion applies regardless whether the insured or the person causing the "bodily injury" is actually charged with or convicted of a crime and regardless whether any insured or person causing the "bodily injury" subjectively intended the injury or damage for which a claim is made.

This exclusion precludes coverage for all insured persons under the policy regardless whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions.

. . .

**d.** **Contractual**

To liability assumed by any insured under any contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

. . .

**h.** **Punitive or Exemplary Damages**

23

Any sum awarded for punitive damages, exemplary damages, multiplied damages, taxes, fines or penalties arising out of any "sexual misconduct or sexual molestation incident".

**i.    Bodily injury, property damage, personal and advertising injury"**

**(1)**    "Bodily injury" for which insurance is provided by other insurance, or which would have been provided but for the exhaustion of limits; or

**(2)**    "Property damage" or "personal and advertising injury".

. . .

**B.    SECTION II - WHO IS AN INSURED**

The following is added to **SECTION II - WHO IS AN INSURED:**

For the purposes of the coverage provided by this endorsement, none of the following is an insured:

**1.**    Any insured who participated in, knowingly allowed or directed a "sexual misconduct or sexual molestation incident".

**2.**    Any person who knew of a "sexual misconduct or sexual molestation incident", and failed to comply with any applicable federal, state or local laws, ordinances or regulations which require the reporting of such act.

**C.    SECTION III - LIMITS OF INSURANCE**

For the purpose of the coverage provided by this endorsement, **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

**1.**    The Limits of Insurance shown in the Schedule or Declaration and the rules below fix the most we will pay regardless of the number of:

**a.**    Insureds;
**b.**    Claims made or "suits" brought; or
**c.**    Persons or organizations making claims or bringing "suits".

**2.**    The **"Sexual Misconduct or Sexual Molestation"** Aggregate Limit is the most we will pay for all damages because or arising in any way

24

out of "sexual misconduct or sexual molestation" to which this insurance applies.

3. Subject to the **"Sexual Misconduct or Sexual Molestation"
Aggregate Limit** the **"Sexual Misconduct or Sexual Molestation"
Each Incident Limit** is the most we will pay for all damages sustained in any one "sexual misconduct or sexual molestation incident".

D. **SECTION IV - CONDITIONS**

For the Purpose of the coverage provided by this endorsement, **SECTION IV - CONDITIONS,** Paragraph **3.** is replace by the following:

3. **Duties In the Event of an Act, Error Or Omission, Or Claim Or Suit"**
   a. You must see to it that we are notified as soon as practicable of a "sexual misconduct or sexual molestation incident" or an offense which may result in a claim. Notice should include:
      **(1)** How, when and where the "sexual misconduct or sexual molestation incident" or offense took place;
      **(2)** The names and addresses of any injured persons and witnesses; and
      **(3)** The nature of any injury arising out of the "sexual misconduct or sexual molestation incident" or offense.

E. **SECTION V - DEFINITIONS**

The following is added to **SECTION V - DEFINITIONS:**

1. "Sexual misconduct or sexual molestation" means actual or alleged physical sexual misconduct or physical sexual molestation arising out of a single, continuous or repeated exposure of one or more persons of acts of a physical sexual nature committed by:

   a. One person; or
   b. Two or more persons acting together or in related acts or series of acts.

   However, "sexual misconduct or sexual molestation" does not include employment-related sexual harassment.

25

2. "Sexual misconduct or sexual molestation incident" means an act or multiple, continuous, related or repeated acts of "sexual misconduct or sexual molestation" by one person or two or more persons acting together. All acts of "sexual misconduct or sexual molestation" by any one person, or two or more persons acting together will be deemed to be one incident. The "sexual misconduct or sexual molestation incident" will be deemed to occur when the first "sexual misconduct or sexual molestation incident" takes place regardless of:

   a. The number of persons injured;
   b. The tie period over which the "bodily injury" took place;
   c. The number of such acts; or
   d. Whether each such person participated in each act.

   All "sexual misconduct or sexual molestation incidents" by one person, or two or more persons acting together will be considered one "sexual misconduct or sexual molestation incident".

3. "Bodily Injury"

   For the purposes of this insurance, the definition of "bodily injury" is replaced by:

   "Bodily injury" means bodily injury, sickness or disease sustained by a person. "Bodily injury" includes mental anguish, mental injury, shock, fright or death resulting from physical injury.

[Exhibit "C" at Endorsement 473-1364 02 11].

49. The Does filed their Complaint in the Underlying Action against the BA Defendants on August 4, 2017.

50. BA provided notice of the Complaint to Hanover on August 9, 2017.

51. BA's receipt of the Does' Complaint was the first notice that Hanover received of the incidents made the basis of the Does' Complaint.

52. Upon review of the Does' Complaint, Hanover agreed to participate in the defense of the BA Defendants in the Underlying Action, subject to a complete reservation of rights.

26

## COUNT I: DECLARATORY JUDGMENT
## HANOVER OWES NO DUTY TO DEFEND OR INDEMNIFY BECAUSE
## THE BA DEFENDANTS ARE NOT INSUREDS

53.     Hanover re-alleges and incorporates by reference paragraphs 1-52 as if fully set forth herein.

54.     While Hanover is presently defending all of the BA Defendants in the Underlying Action under a full reservation of rights, no coverage exists under the Hanover Primary Policy or the Umbrella Policy for the Does' claims in the Underlying Action.

55.     All of the Does' claims in the Underlying Action seek damages arising out of an actual or alleged "sexual misconduct or sexual molestation incident," as that phrase is defined in the policies.

56.     The Sexual Misconduct or Molestation Endorsement in the Primary Policy and the Umbrella Policy is the only portion of either policy that applies to the Does' claims in the Underlying Action.

57.     No policy year other than the 2014-2015 policy year for the Primary and Umbrella Policies potentially applies to the Does' claims in the Underlying Action.

58.     However, based on the Does' allegations in their Complaint, neither the Primary Policy nor the Umbrella Policy provides coverage for any of the BA Defendants because they do not meet the definition of an "insured" in the Sexual Misconduct or Sexual Molestation Endorsement.

59.     The definition of an "insured" under the Sexual Misconduct or Sexual Molestation Endorsement does not include (1) any insured who participated in, knowingly allowed or directed a "sexual misconduct or sexual molestation incident"; or (2) any person who knew of a "sexual

27

misconduct or sexual molestation incident" and failed to comply with any applicable federal, state or local laws, ordinances or regulations which require the reporting of such act.

60.     The Does allege that the BA Defendants participated in, knowingly allowed or directed a "sexual misconduct or sexual molestation incident" and/or knew of a "sexual misconduct or sexual molestation incident" and failed to comply with any applicable federal, state or local laws, ordinances or regulations which require the reporting of such act.

61.     As such, a justiciable controversy exists regarding coverage for the BA Defendants under the Primary Policy and the Umbrella Policy regarding the Does' claims against them in the Underlying Action.

62.     A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Primary Policy and the Umbrella Policy.

**COUNT II:  DECLARATORY JUDGMENT**
**HANOVER OWES NO DUTY TO DEFEND OR INDEMNIFY BECAUSE THE NOTICE**
**CONDITIONS OF THE POLICIES WERE NOT SATISFIED**

63.     Hanover re-alleges and incorporates by reference paragraphs 1-62 as if fully set forth herein.

64.     Hanover does not owe coverage to the BA Defendants because the notice requirements in the Primary Policy and the Umbrella Policy were not satisfied, which are conditions precedent to coverage.

28

65. The Sexual Misconduct or Sexual Molestation Endorsement of the Primary Policy and the Umbrella Policy required that Hanover receive notice "as soon as practicable" of a "sexual misconduct or sexual molestation incident" or an offense which may result in a claim.

66. The Does allege that the BA Defendants were aware of the sexual misconduct or sexual molestation incident in January and/or April 2015.

67. Hanover did not receive notice of the incident until it received a copy of the Does' Complaint on August 9, 2017, and Hanover was prejudiced as a result.

68. The notice that Hanover received did not satisfy the requirements of the Primary Policy or the Umbrella Policy, including, but not limited to, the notice requirements in the Sexual Misconduct or Sexual Molestation Endorsement.

69. As such, a justiciable controversy exists regarding coverage for the BA Defendants under the Primary Policy and the Umbrella Policy regarding the Does' claims against them in the Underlying Action.

70. A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Primary Policy and the Umbrella Policy.

## COUNT III: DECLARATORY JUDGMENT
## HANOVER OWES NO DUTY TO INDEMNIFY BECAUSE THE CLAIMS AND/OR DAMAGES ARE EXCLUDED

71. Hanover re-alleges and incorporates by reference paragraphs 1-70 as if fully set forth herein.

72. The Sexual Misconduct or Molestation Endorsement in the Primary Policy and the Umbrella Policy is the only portion of either policy that applies to the Does' claims in the Underlying Action.

73. No policy year other than the 2014-2015 policy year for the Primary and Umbrella policies potentially applies to the Does' claims in the Underlying Action.

74. The Sexual Misconduct or Molestation Endorsement contains exclusions including the "participating in or knowingly allowing sexual misconduct or sexual molestation" exclusion; the "dishonest, fraudulent, criminal, wrongful or malicious Act" exclusion; the "contractual" exclusion; the "punitive or exemplary damages" exclusion; and the "bodily injury, property damage, personal and advertising injury" exclusion.

75. The claims and damages alleged against the BA Defendants would be excluded under the exclusions in the policy and Hanover does not owe a duty to indemnify the BA Defendants to the extent that each exclusion is applicable.

76. To the extent that any other provisions of the Primary Policy or the Umbrella Policy apply to the Does' Claims, the claims in the Does' Complaint do not meet the insuring agreement of any other provision; are excluded; and/or conditions have not been met.

77. As such, a justiciable controversy exists regarding coverage for the BA Defendants under the Primary Policy and the Umbrella Policy regarding the Does' claims against them in the Underlying Action.

78. A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Primary Policy and the Umbrella Policy.

WHEREFORE, PREMISES CONSIDERED, Hanover requests the following relief:

(1)      That this Honorable Court take jurisdiction of this Petition;

(2)      That this Honorable Court will ORDER, ADJUDGE, and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(3)      That the process of this Honorable Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this Petition for Declaratory Judgment within the time prescribed by law, or in the event of failure to do so, suffer a decree pro confesso;

(4)      That, upon final hearing of this cause, this Honorable Court will declare the rights, status, and legal relations of Hanover and Defendants named in this Petition under the Primary Policy and the Umbrella Policy;

(5)      That, upon final hearing of this cause, this Honorable Court will ORDER, ADJUDGE, and DECREE that no coverage is afforded to the BA Defendants under the Primary Policy or the Umbrella Policy for the Does' Claims in the Underlying Action;

(6)      That, upon final hearing of this cause, this Honorable Court will ORDER, ADJUDGE, and DECREE that Hanover does not have a duty to defend the BA Defendants in the Underlying Action;

(7)      That, upon final hearing of this cause, this Honorable Court will ORDER, ADJUDGE, and DECREE that Hanover does not have a duty to indemnify the BA Defendants in the Underlying Action;

Case 3:17-cv-01411   Document 1   Filed 10/27/17   Page 31 of 32 PageID #: 31

(8)    That, if Hanover is mistaken in any special relief herein prayed for, then it

prays for such other, further, more general relief to which it may be entitled.


Respectfully Submitted:


 s/Joel S. Isenberg
Joel S. Isenberg (BPR No. 26983)
Seth T. Hunter (BPR No. 030200)
Attorneys for Massachusetts Bay Insurance
Company and Hanover Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, Alabama 35209
Phone: (205) 313-1200
Fax: (205) 313-1201
jisenberg@elylawllc.com
shunter@elylawllc.com